# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DURABLA MANUFACTURING COMPANY,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-14415 (MFW)<br><br>Hearing Date: January 6, 2010 at 10:30 a.m.<br>Obj. Deadline: January 1, 2010 at 4:00 p.m. |

## DEBTOR'S MOTION FOR AUTHORITY TO (A) MAINTAIN EXISTING BANK ACCOUNTS, (B) CONTINUE USE OF EXISTING BUSINESS FORMS AND RECORDS, AND (C) CONTINUE USE OF EXISTING INVESTMENT GUIDELINES

Durabla Manufacturing Company (the "Debtor"), pursuant to 11 U.S.C. §§ 105(a) and 345, files this Motion for Authority to (A) Maintain Existing Bank Accounts, (B) Continue Use of Existing Business Forms and Records, and (C) Continue Use of Existing Investment Guidelines (the "Motion"). In support of this Motion, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

2. The relief sought with this Motion is predicated upon sections 105(a) and 345 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "Bankruptcy Code").

### THE CHAPTER 11 CASE

3. On December 15, 2009 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing

in possession of its property and the management of its business as Debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. No creditors committee has yet been appointed in this case by the United States Trustee.

## THE DEBTOR AND ITS BUSINESS OPERATIONS

5. The Debtor formerly distributed sheet gasket material and cut gaskets, some of which may have contained asbestos. As of the Petition Date, the Debtor estimates that there are approximately 108,000 asbestos-related claims against the Debtor on account of its products that allegedly contained asbestos (the "Asbestos Claims").

6. The Debtor has three employees, all of whom are part-time.

7. The Debtor's primary assets are cash deposited in a bank accounts and rights under certain insurance policies and an insurance trust.

8. For the last several years the Debtor's principal business has been to manage asbestos claims against it and prosecute insurance claims against carriers.

9. The Debtor intends to file a chapter 11 plan of reorganization in this case seeking, *inter alia*, an injunction under section 524(g) of the Bankruptcy Code.

10. The aggregate asserted amount of the Asbestos Claims exceeds several million dollars. The Asbestos Claims that have been liquidated thus far have depleted a substantial amount of the monies available under the Debtor's insurance policies. As a result, this Chapter 11 proceeding has been filed to facilitate an orderly process for resolution and payment of the Asbestos Claims.

## RELIEF REQUESTED

11. In order to supervise the administration of chapter 11 cases, the office of the United States Trustee has established certain operating guidelines for debtors-in-possession that operate their businesses. These guidelines require chapter 11 debtors, among other things, to (i) close all existing bank accounts and open new debtor-in-possession bank accounts, and (ii) obtain business forms, including checks, that bear the designation "debtor-in-possession," the bankruptcy case number and the type of account for each debtor-in-possession account.

12. As more fully set forth below, to avoid disruption to the ordinary and usual cash management and day-to-day operations of the Debtor, and to ensure an orderly transition into chapter 11, the Debtor respectfully requests an Order: (i) authorizing it to continue to maintain its existing bank accounts and cash management system; (ii) authorizing it to continue to use its existing business forms, including checks; and (iii) granting it a waiver, to the extent required, from the United States Trustee's guidelines with respect to those requirements identified above. Finally, the Debtor seeks to continue its investment policies during the bankruptcy case without the posting of any bonds pursuant to Section 345(b) of the Bankruptcy Code.

## BASIS OF RELIEF REQUESTED

### A. Continued Use of Existing Bank Accounts and Existing Business Forms.

13. Authorizing the Debtor to continue to use its existing bank accounts is essential to a smooth and orderly transition of the Debtor into chapter 11 and to avoid disruption to its business.

14. The Debtor possesses two bank accounts: (i) a Wilmington Trust Operating Account (Account # 29933294); and (ii) a Wilmington Trust Savings Account (Account #

3

14013385). Funds in the Savings Account are moved into the Operating Account as necessary to cover the Debtor's projected disbursements and expenses.

15. The Debtor's employees would suffer great hardship if the Debtor was compelled to substitute a new debtor-in-possession payroll account for the existing accounts. The establishment of new accounts would inevitably lead to delays, confusion and disruption of payments that would likely adversely affect employee morale at this critical juncture.

16. Moreover, the commencement of the Debtor's chapter 11 case will undoubtedly place a substantial strain not only on the Debtor's relationship with its employees, but also on its relationships with other parties that are vital to the Debtor's continued operations and the achievement of a successful resolution of this case. Requiring the Debtor to open new debtor-in-possession bank accounts would cause delay and confusion.

17. Finally, a transition to new debtor-in-possession bank accounts at this time would be disruptive and time-consuming. By permitting existing accounts to remain open, preserving business continuity, and avoiding the operational and administrative paralysis that closing the accounts and opening new ones would necessarily entail, all parties-in-interest, including the Debtor's employees, will be best served, and the Debtor's estate will benefit considerably.

18. Moreover, the Debtor does not seek authorization of any pre-petition claims through checks drawn on the existing bank accounts that have not yet been honored by the applicable drawee bank, except as separately authorized by this Court. The Debtor represents that if the relief requested in this Motion is granted, it will not pay, and the Debtor's banks will be directed not to pay, any debts incurred before the Petition date, except as separately authorized by this Court.

19. Finally, by virtue of the nature and scope of the Debtor's business, it is imperative that the Debtor be permitted to continue to use its existing business forms, including checks. A substantial amount of time and expense would be required to print new business forms and stationary and would also likely result in a substantial risk of disruption to the Debtor's ordinary business affairs, which could easily interrupt the payment of wages and salaries and payment of necessary expenses.

20. This Court is authorized to grant the relief requested in this Motion pursuant to section 105(a) of the Bankruptcy Code, which provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

21. Bankruptcy courts routinely grant chapter 11 debtors authority to continue using their existing cash management systems and treat such requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). A debtor's use of its pre-petition "routine cash management system" is "entirely consistent" with the provisions of the Bankruptcy Code. *See In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985).

22. The continued use of a cash management system employed in the ordinary course of a debtor's prepetition business has been approved as a routine matter in a number of other cases in this District. *See e.g., Tweeter Home Entm't Group, Inc.*, Case No. 07-10787 (PJW) (Bankr. D. Del. June 13, 2007); *Joan Fabrics Corp.*, Case No. 07-10479 (CSS) (Bankr. D. Del. Apr. 11, 2007); *In re Maxide Acquisition, Inc.*, Case No. 05-10429 (Bankr. D. Del. Feb. 15, 2005); *In re Cable and Wireless USA, Inc., et al.*, Case No. 03-13711 (Bankr. D. Del. Dec. 10,

2003); *In re Redback Networks Inc.*, Case No. 03-13359 (Bankr. D. Del. Nov. 5, 2003); *In re Chi-Chi's, Inc.*, Case No. 03-13063 (Bankr. D. Del. Oct. 9, 2003).

23. For each of these reasons, the Debtor requests that the Court grant its request for maintaining its pre-petition bank accounts and business forms. When necessary, (such as to comply with any order respecting post-petition financing), the Debtor also asks for authorization to open FDIC- or FSLIC-insured bank accounts that will be subject to the requirements of this Order.

**B.     Continued Use of Investment Practices**

24. The Debtor also seeks a waiver of the deposit guidelines set forth in section 345(b) of the Bankruptcy Code to the extent necessary to allow the Debtor to maintain its bank accounts and their existing cash management procedures.

25. Section 345 of the Bankruptcy Code authorizes a debtor to invest cash and money in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). Section 345(b) of the Bankruptcy Code provides as follows:

> (b) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—
> (1) a bond—
>     (A) in favor of the United States;
>     (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>     (C) conditioned on—
>         (i) a proper accounting for all money so deposited or invested and for any return on such money;
>         (ii) prompt repayment of such money and return; and
>         (iii) faithful performance of duties as a depository; or
> (2) the deposit of securities of the kind specified in section 9303 of title 31; unless the court for cause orders otherwise.

11 U.S.C. § 345(b).

26. Section 345 also expressly provides that the Court may modify a debtor's investment requirements for "cause." The Debtor believes that its existing cash management procedures are designed to protect the principal maintained in the accounts while maximizing liquidity and, therefore, believes that sufficient cause exists to waive the investment requirements of section 345(b) to allow the Debtor to continue its existing cash management procedures.

27. Courts have routinely granted requests to approve the continued use of investment and deposit guidelines that do not comply strictly with section 345. *See In re Service Merchandise Company, Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). The Debtor submits that its pre-petition investment practices generally conform with the intent of section 345(b) to protect and maximize the value of its estate.

28. Moreover, the Debtor believes that the amounts deposited in its accounts are safe because of the relative strength of the banks where the Debtor's pre-petition accounts are maintained and that amount presently on deposit does not exceed the FDIC limits. Requiring the Debtor to open multiple accounts at different banks so that deposits in each such bank would be insured by FDIC would be unnecessarily burdensome and would lead to the same delays and disruption to the Debtor's business that this Motion seeks to avoid.

29. The Debtor submits that given the totality of the circumstances, its request is reasonable, and cause exists for the Court to waive the requirements of section 345(b).

30. For the foregoing reasons, the Debtor believes that granting the relief requested herein is appropriate and in the best interests of its estate.

## NOTICE

31. Notice of this Motion has been provided to the Office of the United States Trustee and all creditors listed on the Creditor Matrix. In light of the nature of the relief requested, the Debtor submits that no further notice is necessary.

## CONCLUSION

WHEREFORE the Debtor respectfully requests entry of an order:

(a) authorizing the Debtor to maintain existing bank accounts;

(b) authorizing the Debtor to continue the use of existing business forms, books and records;

(c) waiving of the deposit guidelines set forth in section 345(b) of the Bankruptcy Code to the extent necessary to allow the Debtor to maintain its bank accounts and its existing cash management procedures; and

(d) granting the Debtor such other and further relief as is just and proper.

Dated :December 21, 2009

WHITEFORD TAYLOR PRESTON LLC

/s/ Chad J. Toms
Thomas J. Francella, Jr., Esquire, DE Bar No. 3835
Chad J. Toms, Esquire, DE Bar No. 4155
1220 N. Market Street, Suite 608
Wilmington, Delaware 19801-2535
Telephone: (302) 353-4144
Facsimile: (302) 661-7950
Email: tfrancella@wtplaw.com
ctoms@wtplaw.com

and

Paul M. Nussbaum, Esquire
Cameron J. Macdonald, Esquire
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202

Telephone: (410) 347-8700
Facsimile: (410) 752-7092
Email: pnussbaum@wtplaw.com
cmacdonald@wtplaw.com

[Proposed] Counsel for Durabla
Manufacturing Company